Juana Suárez de Arroyo, Plaintiff and Appellant, *v.* Manuel Saavedra Soler, Defendant and Appellee.

No. 8465. Argued April 29, 1942.—Decided June 19, 1942.

*José Veray, Jr.,* for appellant. *García Méndez & García Méndez* for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the court.

This case comes before us for a second time. It started in 1933 in the District Court of Aguadilla, which court found for defendant on a motion for nonsuit interposed by him. Plaintiff appealed and the judgment was reversed on February 14, 1938, *Suárez v. Saavedra,* 52 P.R.R. 662, and the case was remanded for further proceedings not inconsistent with the opinion.

In the district court the parties finally agreed that defendant should be permitted to submit his evidence. After this was done, the court again rendered judgment against the plaintiff and she appealed. This appeal is now before us.

This is an action for damages filed in 1933 by the mother of a minor against an employer for the wrongful death of the minor caused by an employee or servant of defendant through an act of violence committed within the scope of his employment.

To prove her case plaintiff offered the testimony of Salvador Nenadich, Carlos Martínez and Gilberto del Valle.

Nenadich, a youngster thirteen years of age, testified that he knew Juan Arroyo Suárez, who on February 17, 1932, was walking on the shoulders of the road that links Isabela and Aguadilla, when Félix González, who was riding on a truck loaded with sugar cane, belonging to Manuel Saavedra, threw a piece of cane at him "with all his trength and in a rage" and struck him. There were other persons taking pieces of

cane from the truck. González did not aim at the group, but at Juan.

Martínez knew Juan, plaintiff's son, whom Félix González, conductor of defendant's cane truck, struck with a piece of cane on February 17, 1932. Juan "came running with a group of youngsters". Félix "climbed on top of the cane load and threw a piece of cane with strength and in a rage" at the group, striking Juan. The "child [Juan] was not stealing cane...he was in a group with others who were stealing cane." He died as a consequence of his injuries.

Gilberto del Valle, seventeen years old, saw Juan wounded on the roadside. The latter was saying that González, keeper of the cane load on the truck, had thrown a piece of cane at him. The truck did not stop. The youngster was moaning and he could not walk.

The next witness was the plaintiff herself, who testified that she was a widow, that Juan was her son, that he was, fourteen years old and that he was in the fifth grade in school; that on February 17, 1932, when he was hurt, they took him to the Municipal Hospital, where he was assisted by Doctors Cardona and Igartúa; that he remained there under treatment by doctors and nurses for three days, at the end of which he died. She has not paid any fees, nor has she received any bill therefor.

According to the death certificate submitted in evidence, the youngster died on February 21, 1932, as a result of a traumatic perforation of the ileum.

A motion for nonsuit was filed by defendant and granted by the court. The district court dismissed the complaint. Plaintiff appealed and this court, as we said before, reversed the judgment, dismissed the motion for nonsuit, and remanded the case to the lower court for further proceedings not inconsistent with the opinion.

In that opinion, delivered by Mr. Justice Hutchison, the case was studied, and the law, authorities, and legal principles

applicable to the case were set forth. The opinion reads in part as follows:

"In the insular courts there are no jury trials in civil cases. A district judge, in passing upon a motion for nonsuit, is not precluded from drawing reasonable and proper inferences from the evidence. *Rosado v. Ponce Ry. Light Co., supra.* In drawing such inferences, however, he should bear in mind that, as pointed out in the Rosado case 'motions for nonsuit should be considered with great caution and only granted in the clearest cases.' He should also, of course, be under no misapprehension as to the law applicable to the facts before him. If, in the instant case, it were clear that there was no mistake of law or of fact and that the result would have been the same if the motion for nonsuit had been overruled, there would be no reason for a reversal.

"The theory of defendant's motion was that a principal is responsible only for negligent or careless conduct of his agent, not for any criminal act committed by such agent. That is not the law.

"The district judge did not definitely adopt defendant's theory of the law. His reasoning was largely in line with the true test. Nevertheless, his conclusion and the result might have been different but for the influence of defendant's theory. An overruling of the motion for nonsuit, of course, does not preclude further consideration of the evidence by the district court in the light of the trend indicated by the more recent cases as shown by the extracts, *supra.*" *Suárez v. Saavedra,* 52 P.R.R. 662, 668.

The evidence ultimately submitted by defendant consisted of his own testimony and that of Félix González.

In synthesis, Saavedra testified that González was employed as an auxiliary driver to warn the chauffeur, from the rear of the truck, of all approaching vehicles; that he was never ordered to punish the children who might approach the truck with the purpose of taking pieces of cane; that González was not thus authorized. In response to a question as to who was the custodian of the sugar cane loaded in the truck, he answered that no one was appointed for that task, because there was no necessity for it.

González testified that his duties were "to load the cane into the truck and warn the chauffeur of all approaching

vehicles." "He", Saavedra, "told me that I was there to load the cane and look after his interests."

After saying that, the following questions were put to him by the attorney for defendant, and he gave the following answers: "Q. How did you look after that cane?—A. I saw to it that they would not drop from the truck.—Q. And if any youngster were to pull some cane from the truck, did don Manuel Saavedra tell you that you should throw pieces of cane at them?—A. No, sir; he told me that if the youngsters should pull pieces of cane from the truck, I was to ignore them and let them do it."

He admits that on the day of the accident "all the children that were coming out of school stuck" to the truck and started to take cane from it, but he denies that he threw a piece of cane at the group or at any youngster in particular.

After considering all of the evidence submitted, the district court again dismissed the complaint. Its conclusion appears in the following two paragraphs of the statement of the case and opinion, to wit:

"As it appears from the evidence submitted, the court must conclude that .González directly threw the piece of cane at the Arroyo boy in such a fashion that his act constituted such an outrageous conduct as to exonerate his master of all responsibility.

"Moreover, the evidence submitted by defendant demonstrates that González was not authorized to attack or punish the youngsters for taking pieces of cane, and that his sole mission was to blow the whistle in order to warn the chauffeur of vehicles approaching from the rear, or when the load should shift. In acting outside of the instructions given to him by his master in such an outrageous manner, thereby inflicting the severe punishment demonstrated by the evidence submitted by the plaintiff, the servant was acting entirely outside the scope of his employment; therefore defendant Saavedra can not be held responsible."

We do not agree with the lower court. In spite of the natural tendency of the testimony rendered by defendant and his employee to evade the responsibility which must be exacted from the former for the acts of the latter, the truth

is that when they are carefully analyzed they show exactly the opposite of what they intended to prove.

Saavedra's testimony is quite long. He does everything within his power to evade the admission of the fact that González was his employee, but truth will not be denied, and he admits it. It may be granted that he did not specifically order his employee to punish the youngsters who might steal some cane, but his statement relative to the fact that no one was charged with the custody of the cane is incredible.

His own employee contradicts him. In answering a question put to him by his attorney, he said that he received instructions from Saavedra not only to load the cane, but also to "look after his interests" as well. He is questioned further along the same lines which we already know, and he limits the care of the cane to a determined end. His statement about the youngsters is truly incredible.

We think that the evidence submitted sufficiently justifies the conclusion that González was hired by defendant to perform the task of transporting sugar cane in a truck driven by another person, that his duties were to load said sugar cane in the truck, station himself in the rear of the truck to warn the driver of approaching vehicles, and generally to care for the property being transported. Such being the circumstances of his employment, it was within the scope of same to prevent any and all persons, including children, from taking pieces of cane from the truck without permission.

Therefore, when, on February 17, 1932, the group of youngsters approached the truck with the purpose of taking cane without any right thereto, the servant's act of throwing a piece of cane at the group in order to stop them was committed in defense of the interests of his master and within the scope of his employment.

It is true that the servant acted with excessive violence, but said violence, in the light of all concerning circumstances —locus, kind of transportation, number of children, nature of

the object thrown and the intent with which it was thrown—takes this case out of the citation made on page 665 of the opinion of this court in *Suárez* v. *Saavedra,* 52 P.R.R. 662, which reads as follows:

''The fact that the servant acts in an outrageous manner or inflicts a punishment out of all proportion to the necessities of his master's business is evidence indicating that the servant has departed from the scope of employment in performing the acts.'' (P. 550.)

The above-mentioned circumstances place this case within another citation that also appears in the same opinion, and which was likewise taken from 1 Restatement of the Law of Agency, 550, 551, to wit:

''A is employed by P as the driver of an ice wagon. While A is delivering ice, a number of children annoy him by endeavoring to get pieces of ice. A throws a piece of ice at one of them in order to expedite his work. The fact that he also hopes to cause pain to the child and thereby get revenge for the annoyances, does not prevent the act from being within the scope of employment.'' (P. 551.)

The doctrine established in the cases of *Doscher* v. *Superior Fire Proof Door & Sash Co., Inc.* (N. Y.), 221 App. Div. 63, and *Zerngis* v. *H. P. Hood & Sons Co.,* 152 N. E. 50, (Mass.), which were cited in the opinion of *Suárez* v. *Saavedra, supra,* at page 665, is applicable to this case.

It only remains for us to fix the amount of the indemnity. The complaint prays for $15,000.00, which sum is clearly excessive. Claimant is a mother and a widow who seeks an award in damages for the death of a son eleven or fourteen years of age who was attending the fifth grade. It was not proved that the son had any special ability. The evidence submitted to this end was very weak.

In the case of *Maldonado* v. *The Porto Rico Drug Co.,* 31 P.R.R. 709, 727–728, in which a father claimed damages for the wrongful death of a son eight years old who died as

a result of having swallowed certain capsules of chenopodium improperly sold by the defendant, and in which we had to reverse the judgment rendered and substitute it for the one that should have been rendered by the lower court, this court said:

"Did the plaintiff prove the damages claimed? There is nothing in the evidence to show the amount of the expenses incurred by the father by reason of the illness and death of his child. No specific damage was proved. The only basis recognized by the jurisprudence as sufficient for the recovery of damages in cases of this kind is the death of the child.

"The law in Porto Rico on this matter is the same as that in force in California and the Supreme Court of that State has held as follows:

" 'The main element of damages is the probable value of the services of the deceased child until its majority, the jury are limited by the actual pecuniary injury to parent. The loss of services is not special damages necessary to be pleaded. A verdict for $20,000 was set aside as excessive; *Morgan* v. *Southern Pac. Co.*, 95 Cal. 510; 29 Am. St. Rep. 143. See, also, *Cleary* v. *City R. R. Co.*, 76 Cal. 240, as to amount of damages which a father is entitled to recover for the negligent killing of his minor child.' Pomeroy's Cal. Code of Civil Procedure, p. 123.

"In the last case cited the court said:

" 'Under section 377 of the Code of Civil Procedure, the amount of damages which a father is entitled to recover for the negligent killing of his minor child is such sum as, under all the circumstances of the case, is just and reasonable; and in determining the amount of the recovery, the jury may properly consider, not only the loss of the child's services during minority, and the medical attendance and funeral expenses, but also the mental anguish and suffering of the parents.' *Cleary* v. *City R. R. Co.*, 76 Cal. 240.

"Considering the circumstances of the present case, the anguish and mental suffering of the parents must necessarily have been intense. As to the probable services of the boy, we only know that he was eight years of age, lacking thirteen years of attaining his majority. In Porto Rico, especially in very poor families, or families of limited means, it is not rare that a minor works and contributes the whole product of his labor to the general expenses of the home. Much depends upon the health and personality of the minor.

We know nothing definite in this case, but it is necessary to assign some value to the services of the boy.

"Considering, therefore, the evidence as a whole, it seems that the amount of the indemnity may be reasonably fixed at $3,000."

Then, in *Ramos* v. *Sucesión Serrallés*, 51 P.R.R. 332, where a small girl three years old was struck by a railroad car of defendant, in reversing the judgment appealed from and substituting it, we fixed the damages at $2,500.00.

Lastly, in *Castro* v. *González*, 58 P.R.R. 369, 385, in which the father claimed damages for the wrongful death of his minor daughter, and the district court awarded $12,000 as indemnity, this court, in lowering the amount to $5,000, said:

" . . . We know that no amount, however great it may be, is sufficient to compensate fully for the death of a child; but taking into consideration the practice followed in this jurisdiction and the circumstances of this case, we are of the opinion that a judgment for $12,000 exceeds the limits established therein. . . ."

Considering all the circumstances of this case, we think that the sum of $3,000 is a reasonable award.

In view of the foregoing, the judgment appealed from must be reversed and another rendered instead adjudging the defendant to pay to the plaintiff the said sum, with costs including $300 as attorney's fees.